IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 12-cr-20258-JTF-tmp |
| JACOB RHODES, | ) ) ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Before the court by order of reference is defendant Jacob Rhodes's Motion to Dismiss, filed on January 11, 2013. (ECF No. 17.) The government filed a response in opposition on January 17, to which Rhodes filed a reply on January 30. The government filed a supplemental response to Rhodes's reply on February 27. On February 28, the court heard oral argument on the motion. For the following reasons, it is recommended that the motion be denied.

On October 16, 2012, a federal grand jury returned a three count indictment against Rhodes. Count 1 charges Rhodes with possession of an unregistered pipe bomb, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. Counts 2 and 3 charge Rhodes with violations of 18 U.S.C. § 922(g)(3), which prohibits the possession of a firearm by any person who is an unlawful user of or addicted

to a controlled substance.[1]

In his motion to dismiss, Rhodes challenges the sufficiency of the indictment with respect to Counts 2 and 3. Count 2 of the indictment states:

> On or about July 25, 2011, in the Western District of Tennessee, the defendant Jacob Rhodes, then being an unlawful user of a controlled substance as defined in 21 U.S.C. § 802, did knowingly possess, in and affecting interstate commerce, a firearm, that is, a Mossburg 500, 12 gauge shotgun, said firearm having been shipped and transported in interstate commerce; all in violation of Title 18, United States Code, Section 922(g).

Count 3 of the indictment is identical to Count 2, with the exception that the date of the offense is "[o]n or about January 25, 2012." Rhodes argues that the two counts must be dismissed because they fail to include an essential element of the offense – the identity of the specific controlled substance he allegedly was an unlawful user of when he possessed the Mossburg shotgun. Separately, Rhodes contends that the indictment's omission of the identity of the controlled substance makes it impossible for him and the court to determine whether Counts 2 and 3 may be multiplicitous.

**A.    Essential Element**

According to the Federal Rules of Criminal Procedure, an

---

[1]Rhodes states in his motion that "the indictment does not identify what subchapter of 18 U.S.C. § 922(g) the government is proceeding [under]." While it is true that Counts 2 and 3 refer only to § 922(g), and not to § 922(g)(3) specifically, it is clear from the charging language that § 922(g)(3) is the applicable subsection.

indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. (7)(c)(1). Indictments must satisfy the requirements set forth by the Notice Clause of the Sixth Amendment, which states that "a criminal defendant has the right 'to be informed of the nature and cause of the accusation' against him," as well as the Indictment Clause of the Fifth Amendment, which "requires that a defendant be charged only with those charges brought before the grand jury." United States v. Maney, 226 F.3d 660, 663 (6th Cir. 2000) (quoting U.S. CONST. amend. VI). The Supreme Court has stated that an indictment is sufficient "if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); see also United States v. Coss, 677 F.3d 278, 287 (6th Cir. 2012). "[A]n indictment that recites statutory language in describing the offense 'is generally sufficient . . . as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" United States v. Hudson, 491 F.3d 590, 593 (6th Cir. 2007) (quoting Hamling, 418 U.S. at 117). "[T]o be legally sufficient, the indictment must assert facts which in law

constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (internal quotations omitted).

18 U.S.C. § 922(g)(3) states that:

It shall be unlawful for any person

. . .

> (3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));

. . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(3). In his motion, Rhodes argues that he "has not been placed on notice as to what or how many different controlled substances it is alleged he was addicted to or an 'unlawful user of' at the times alleged in the indictment in order to prepare a defense." Rhodes claims that because a conviction under the statute requires proof of a pattern of regular and repeated use of a controlled substance, the type of controlled substance is an essential element of the offense which must be included in the indictment. In support of his argument, Rhodes cites the Sixth Circuit's pattern jury instruction that defines the term "unlawful user of a controlled substance," which was first

established in United States v. Burchard, 580 F.3d 341 (6th Cir. 2009). In Burchard, the court defined the term "unlawful user of a controlled substance" under § 922(g)(3) as follows:

> The term "unlawful user of a controlled substance" contemplates the regular and repeated use of a controlled substance in a manner other than as prescribed by a licensed physician. The one time or infrequent use of a controlled substance is not sufficient to establish the defendant as an "unlawful user." Rather, the defendant must have engaged in use that was sufficiently consistent and prolonged as to constitute a pattern of regular and repeated use of a controlled substance. The government need not show that defendant used a controlled substance at the precise time he possessed a firearm. It must, however, establish that he was engaged in a pattern of regular and repeated use of a controlled substance during a period that reasonably covers the time a firearm was possessed.

Id. at 352. In response to Rhodes's motion, the government contends that the indictment is sufficient because it tracks the language of § 922(g)(3), contains all of the essential elements of the offense charged, identifies the firearm he possessed, and specifies the approximate dates on which he possessed the firearm while being an unlawful user of a controlled substance. Nevertheless, while maintaining that the type of controlled substance is not an essential element of the crime that must be alleged in the indictment, the government has notified Rhodes through discovery that the controlled substances at issue are heroin and marijuana.[2]

---

[2]The government attached to its response brief grand jury testimony that identifies heroin as the controlled substance Rhodes was allegedly using at the time he possessed the Mossburg shotgun

A defendant's status as an unlawful user of a controlled substance under § 922(g)(3) is analogous to a defendant's status as a convicted felon under § 922(g)(1). In the § 922(g)(1) context, the omission of a defendant's underlying felony conviction does not render an indictment defective, because the identity of the specific felony conviction is not an essential element of the offense. See, e.g., United States v. Bonee, 141 F. App'x 456, 458 (6th Cir. 2005) (the "essential elements" of a § 922(g)(1) violation are (1) the defendant had a previous felony conviction; (2) the defendant possessed a firearm; and (3) the firearm had traveled in or affected interstate commerce). Similarly, the type of controlled substance of which the defendant was a user at the time of the firearm possession is not an element of a § 922(g)(3) offense, and thus the failure to identify it in the indictment also does not render the indictment defective. Rhodes's reference to the jury instruction in Burchard does not support his argument that the indictment is defective. To the contrary, the instruction merely requires that the jury find a pattern of regular and repeated use of *a* controlled substance during a period covering the time of the firearm possession.

Moreover, the fact that the defendant's status as an unlawful user of a controlled substance is an essential element of the

---

identified in Counts 2 and 3. At oral argument, the government stated that it has since notified Rhodes that it intends to offer proof at trial that he also was a user of marijuana.

offense does not mean that the identity of the controlled substance is also an essential element. For example, under § 922(g)(1), while possession of a firearm is an essential element, the Sixth Circuit has held that the "specific type of firearm possessed by a felon is not an essential element of the offense charged under § 922(g)(1)." United States v. Smith, 27 F. App'x 577, 581 (6th Cir. 2001); see also United States v. Robison, 904 F.2d 365, 369 (6th Cir. 1990) (holding that the specific type of firearm used or possessed during a crime of violence is not an essential element of an offense charged under § 924(c)).

Counts 2 and 3 of the indictment track the statutory language of 18 U.S.C. § 922(g)(3). Both counts state that Rhodes knowingly possessed a firearm on or about certain dates, in or affecting interstate commerce, while being an unlawful user of a controlled substance as defined by the Controlled Substances Act. Although not required by the case law, the counts also specify the firearm Rhodes allegedly possessed. These allegations, if proved, would establish prima facie the defendant's commission of that crime. Therefore, the court recommends that Rhodes's motion to dismiss Counts 2 and 3 of the indictment due to the indictment's failure to identify the controlled substance be denied.

**B. Multiplicity**

Rhodes's second argument is that the indictment's lack of specificity as to the identity of the controlled substance

-7-

potentially renders Counts 2 and 3 multiplicitous.[3]  Rhodes essentially contends that if the controlled substance at issue in each count is the same, then the counts are multiplicitous because they both charge him for possession of the same firearm during what "can be argued [to be] . . . nothing more than a consistent and prolonged pattern of regular and repeated use of the same controlled substance."  Thus, according to Rhodes, unless the government can show a "break in the chain of possession" of the firearm, Rhodes's continuous drug use between the dates identified in Counts 2 and 3 would make his possession of the firearm a single offense.

To the extent Rhodes argues that the identity of the controlled substance is relevant to the issue of whether Counts 2 and 3 are multiplicitous, the court rejects this argument.  Whether those counts are based on regular use of the same controlled substance, different substances on each occasion, or a combination of substances on each or both occasions, the identity of the controlled substance has no bearing on whether the counts are

---

[3] In his motion and reply, Rhodes refers to the counts as being both "multiplicative" and "duplicative," seemingly using the terms interchangeably.  Multiplicity "is the charging of a single offense in more than one count in an indictment," United States v. Angeles, 484 F. App'x 27, 32 (6th Cir. 2012), whereas duplicity exists where an indictment "sets forth separate and distinct crimes in one count."  United States v. Davis, 306 F.3d 398, 415 (6th Cir. 2002). Because Rhodes is arguing for dismissal of one of the counts on the grounds that they charge the same offense, the issue before the court is multiplicity.

-8-

multiplicitous.  If Rhodes possessed the same firearm without a "break" in the possession, then he could only be convicted of one offense, regardless of the circumstances surrounding his use of controlled substances.[4]

Here, the government has charged Rhodes with two violations of the same statute, and both violations arose from the continuous possession of a single firearm.[5]  In United States v. Jones, 533 F.2d 1387 (6th Cir. 1976), the defendant was charged with three separate counts of being a felon in possession of a firearm, based on possession of the same revolver on three different dates in different locations.  The defendant, who was convicted on all three counts, challenged his convictions based on the Double Jeopardy

---

[4] Conversely, if Count 2 had charged Rhodes with possession of a shotgun and Count 3 had charged him with possession of a handgun on a different date at a different location, the counts would not be multiplicitous, regardless of whether he was a regular user of heroin on both occasions, or heroin on one occasion and marijuana on the second occasion, or heroin and marijuana on one occasion and only heroin on the second occasion.  Under those facts, the possession of different firearms on different occasions would justify two separate charges against Rhodes, and it would not matter what controlled substance or combination of substances he was using when he possessed those firearms.

[5] Both in its supplemental reply and at oral argument, the government noted that this multiplicity argument was not raised by Rhodes in his briefs.  The court disagrees.  The argument was raised by Rhodes on page three of Rhodes's reply, in which he states that "[u]nless there is proof that there was ever a break in the chain of possession of the weapon, then each day the defendant possessed the weapon and was an 'unlawful user' would amount to nothing more than a continuation of the same charge."  Rhodes's reply goes on to state that "counts two and three are [multiplicitous] unless it is alleged that there was a break in the chain of possession."

Clause of the Fifth Amendment, claiming that his continuous and uninterrupted possession of the same weapon constituted only one offense. Id. at 1390. In finding in favor of the defendant, the Sixth Circuit held that:

> Possession is a course of conduct, not an act; by prohibiting possession Congress intended to punish as one offense all of the acts of dominion which demonstrate a continuing possessory interest in a firearm. If Congress had wished to punish each act of dominion it could have done so easily by forbidding the acts of dominion instead of the course of conduct. In fact, Congress did declare the possessory acts of receiving and transporting firearms to be illegal, but Jones was not charged with performing such acts.[6]

Id. at 1391. In similar cases, the Sixth Circuit has held that felon in possession convictions pursuant to 18 U.S.C. § 922(g) are multiplicitous where possession of the same gun was continuous and

---

[6]Earlier in the opinion, the Sixth Circuit explained the implications of allowing multiple charges for the separate instances of possession:

> It is true that in the case at bar the Government is claiming that Jones possessed the pistol on three separate occasions, not that continuous possession existed which has been broken down into arbitrary time period[s]. With equal propriety the Government might have charged Jones with possession on more than 1100 separate days and obtained convictions to imprison Jones for the rest of his life. The fact that the Government merely has proof that he possessed the same weapon on three separate occasions, rather than continuously for a three-year period, should not dictate the result that Jones could receive three times the punishment he would face if continuous possession for a three-year period were proved. There is no proof that there was any interruption in the possession by Jones of the weapon.

Jones, 533 F.2d at 1391.

-10-

uninterrupted.  See United States v. Sanders, Nos. 93-4322, 94-3021, 1994 WL 714377, at *1 (6th Cir. Dec. 22, 1994); United States v. Ford, No. 89-3841, 1990 WL 54228, at *3 (6th Cir. Apr. 30, 1990).

The government concedes that Jones applies to this case and that, because Counts 2 and 3 allege possession of the same firearm and there is no proof of a break in the possession, those counts are multiplicitous.[7] Rhodes argues that prior to trial, one of the counts should be dismissed, or the two counts should be merged. The government disagrees, arguing that the correct procedure is to allow both counts to go to trial, and then, should Rhodes be convicted on both counts, vacate one of the convictions at sentencing.

In support of its position, the government cites the Supreme Court's decision in Ball v. United States, 470 U.S. 856 (1985), in which the defendant was charged with both receipt and possession of the same firearm under 18 U.S.C. §§ 1202(a)(1) and 922(h),

---

[7]In its initial response to Rhodes's motion, the government relied heavily on United States v. Perry, 247 F. App'x 712, 716 (6th Cir. 2007), in which the Sixth Circuit held that "a defendant may be convicted of multiple counts of possessing a firearm if he possessed those firearms at different locations." (citing United States v. Adams, 214 F.3d 724, 728 (6th Cir. 2000); United States v. Vance, 724 F.2d 517, 518 (6th Cir. 1983)). The government claimed that because the two counts against Rhodes are for possession of the firearm at different locations and on different dates, they are not multiplicitous. However, at oral argument, the government agreed that Jones was applicable to this case because of the fact that both counts are for possession of the same firearm rather than multiple weapons at different places and times.

respectively, based on the same events.  In that case, the Court stated that there was "no bar to the Government's proceeding with prosecution simultaneously under the two statutes[,]" noting that, in a prior case, the Court had found that "both the statutory language and the legislative history showed that [§§ 1202(a) and 922(h)] were to be applied independently."  Id. at 860 (citing United States v. Batchelder, 442 U.S. 114, 118-21 (1979)).  The Supreme Court recognized that the government was entitled to seek a multiple count indictment and held that, "should the jury return guilty verdicts for each count . . . the district judge should enter judgment on only one of the statutory offenses." Id. at 865.  Similarly, in United States v. Throneburg, 921 F.2d 654, 656-57 (6th Cir. 1990), the Sixth Circuit followed Ball and instructed that, following multiplicitous convictions for two violations of § 922(g) arising out of the simultaneous possession of a firearm and ammunition, the appropriate remedy is to have the district court vacate one of the underlying convictions.

Ball is distinguishable from the instant case in that Ball involved two separate statutes and offenses based on the same events.  The Court's analysis focused on whether Congress intended for defendants to be punished twice for the same conduct made illegal by both statutes, and whether the statutes were meant to be applied independently of one another.  The Court stated that it "has long acknowledged the Government's broad discretion to conduct

criminal prosecutions, including its power to select the charges to be brought in a particular case." 470 U.S. at 859 (citing, e.g., United States v. Goodwin, 457 U.S. 368, 382 (1982)). However, there is a difference between the government choosing to prosecute a defendant for multiple statutory violations arising out of the same conduct (as in Ball) and prosecuting a defendant multiple times for the same statutory violation (as is the case here). While Throneburg is more analogous to Rhodes's situation because that case involved two charges for the same statutory violation, that case is also distinguishable because it involved possession of two separate items - a firearm and ammunition. Here, Rhodes is being prosecuted twice for a single, continuous possession of the same firearm. Moreover, in Throneburg the Sixth Circuit simply found that the district court's reliance on Ball was not an abuse of discretion. Id. at 657. The court does not read Throneburg to stand for the proposition that vacating multiplicitous convictions at sentencing is the required procedure in all cases.

Instead, Throneburg stands for the proposition that the trial court has discretion in addressing multiplicitous counts, including possibly dismissing counts prior to trial. Throneburg, 921 F.2d at 657 (quoting United States v. Reed, 639 F.2d 896, 904 n. 6 (2d Cir. 1981)) ("the district court has discretion in deciding whether to require the prosecution to elect between multiplicitous counts especially 'when the mere making of the charges would prejudice the

-13-

defendant with the jury.'"); see also United States v. York, No. 94-3655, 1995 WL 369319, at *2 (6th Cir. June 20, 1995) (quoting Reed, 639 F.2d at 904 n.6 (2d Cir. 1981)) (holding that district court has discretion to choose whether to make the prosecution elect among the multiplicitous counts, dismissing all but one, stating only that it is "'*most appropriate* when the mere making of charges would prejudice the defendant with the jury.'") (emphasis added).

The present case is not one in which the mere making of the multiple charges would prejudice Rhodes with the jury. Regardless of whether the government proceeds to trial on one count or two (relating to the shotgun possession), the government will present evidence that Rhodes possessed the shotgun on two occasions, and that he was a regular user of drugs during those occasions. Thus, Rhodes will not be prejudiced by the multiple counts. In addition, because the government will present evidence on Rhodes's possession of the firearm and drug use on two separate occasions, it may be less confusing to the jury to deliberate on two separate charges as opposed to deliberating on one charge.

For the reasons above, it is recommended that the motion to dismiss be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

March 5, 2013
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**